UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

P.J. MORANTE                                                                                    PLAINTIFF

VERSUS                                                        CIVIL ACTION NO. 5:12CV55-DCB-RHW

UNKNOWN PHILLIPS et al                                                                  DEFENDANTS

### PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Plaintiff P.J. Morante, proceeding *pro se* and *in forma pauperis*, filed an action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 433 U.S. 388 (1971) against Defendants Lieutenant Antony Phillips, Lieutenant Leon Williams, Correctional Officer DeQuanty Lott, Recreation Specialist Zandra Bender, and Recreation Specialist Johnny Moore. Defendants were all officers and employees at the Federal Correctional Complex, Yazoo City, Mississippi (FCC Yazoo City) at the time of the incident in question. Plaintiff's sole cause of action is that Defendants failed to protect him from assault at the hands of another inmate.

Plaintiff alleges that the injury resulted from a fight that occurred November 3, 2010, between two rival groups of inmates. Plaintiff further alleges that the fight started because inmate Juan (Johnny) Vasquez was allowed to enter the general population despite prison officials' knowledge that Vasquez was a rival and target of the Paisa gang at FCC Yazoo City. Plaintiff attributes the hostility between Vasquez and the Paisa members to events that occurred at FCC Yazoo City in the 2005-06 time frame. Just prior to the fight of November 3, 2010, Defendants Bender and Moore were standing post by the gate to the recreation yard. They noticed that more Hispanic inmates than normal were entering the recreation yard. Bender called the on-duty Operations Lieutenant, Antony Phillips. Phillips contacted Defendant Lott and

directed him to retrieve a camera and video camera and to meet him at the recreation yard. Based on past experience, Defendants found that using camera and video surveillance helped to prevent inmate violence. Phillips and Lott began taking pictures and videotapes of the inmates. At this point, Defendants observed that the inmates began to disperse. Phillips and Lott then left the recreation yard.

Shortly after Phillips and Lott departed; however, the inmates began to regroup. As Bender walked to the office to notify Phillips, two groups of inmates rushed each other and began to fight. Bender activated her body alarm and Moore radioed to the Control Center requesting additional staff. Bender and Moore ordered the inmates to stop fighting and to get down on the ground. Phillips returned to the recreation yard and also began ordering the inmates to stop fighting. The inmates continued fighting. Phillips called for additional staff and ordered the use of less-than-lethal munitions. The inmates were then restrained and moved to secure locations.

In an [32] affidavit (declaration) in support of his [31] response, Plaintiff alleges that just before the fight, he was in the recreation yard at FCC Yazoo City playing basketball. He went to get a drink of water from the water fountain. As he was returning from the drinking fountain, the fight broke out between two rival groups of inmates. Plaintiff alleges that he went to assist one inmate who had been injured and was lying on the ground. As he assisted the injured inmate, another unidentified inmate ran up and swung at Plaintiff's head with a metal rod. Plaintiff raised his hand to protect himself. The rod struck and fractured Plaintiff's hand.

Pursuant to an investigation, prison officials determined that the disturbance resulted from inmate Vasquez entering the general population on November 2, 2010. Members of the

Paisa gang recognized Vasquez as an inmate who had assaulted a Paisa inmate during a previous stay at FCC Yazoo City. Also as a result of the investigation, Morante and other inmates were issued incident reports charging them with failing to obey an order. Morante was found guilty of the charges and was sanctioned with loss of 14 days of good conduct time, 15 days disciplinary segregation, and loss of commissary and telephone privileges for a year. The Discipline Hearing Officer also recommended a disciplinary transfer. On June 15, 2011, Morante was transferred from FCC Yazoo City to FCI Phoenix.

## **Motion for Default Judgment**

On June 6, 2012, Morante filed a [18] Motion for Default Judgment, in which he argued that Defendants had not filed an answer or responsive pleading to his complaint. The undersigned recommends that this motion be denied, because Defendants filed a timely responsive pleading.

On May 7, 2012, the Court entered an [10] Order directing that process be issued as to the Defendants and further directing that Defendants file their answers and responsive pleadings in accordance with the Federal Rules of Civil Procedure and Local Rules of the Court. The docket indicates that Defendants were served with process on May 9, 2012. Rule 12(a)(2) and (3) of the Federal Rules of Civil Procedure allow 60 days from the date of service for a United States officer or employee to file its answer or other responsive pleading. Defendants filed their [24] Motion to Dismiss or for Summary Judgment on July 9, 2012--in other words, within 60 days of being served with the summons and complaint. Hence, the undersigned finds that Defendants' responsive pleading was timely pursuant to the Federal Rules of Civil Procedure. Accordingly, the undersigned recommends denying Morante's [18] Motion for Default Judgment.

## Motion for Leave to Amend Complaint

Morante filed on July 9, 2012, a [22] Motion for Leave to Amend Complaint. Morante mailed his motion prior to Defendants' first responsive pleading. The motion was then filed on the same day as, but just prior to, the filing of Defendants' [24] Motion to Dismiss or for Summary Judgment. Plaintiff's amended complaint re-states and expands on the claims already raised in his original [1] complaint and accompanying [4] affidavit. He does not allege any new grounds for relief.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires. Given the liberal amendment policy of the federal rules as interpreted by the courts, the undersigned recommends that the motion to amend be granted. *See Lowrey v. Texas A&M University System*, 117 F.3d 242, 245 (5th Cir. 1997). The undersigned will consider the allegations in Morante's [22] amended pleading in assessing Defendants' [24] Motion to Dismiss or for Summary Judgment.

## Motion to Dismiss and/or for Summary Judgment

### Standard of Review

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no

4

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does no exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552." *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burned of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.,* 584 F.2d 111, 114 (5th Cir. 1978).

**Qualified Immunity**

In their [24] Motion to Dismiss, or for Summary Judgment, Defendants argue that they are entitled to qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their

5

conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate a genuine issues of material fact regarding the defendant's reasonableness. *Id.* When assessing a qualified immunity defense the threshold question is whether plaintiff's allegations, if true, establish a constitutional violation, and whether the law at the time was clearly established. *Hope v. Pelzer*, 536 U.S. 730, 736-39 (2002). If the law was clearly established, the court must determine whether the defendants' conduct was objectively reasonable. *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002).

The only claim asserted in Morante's complaint is that the Defendants failed to protect him from violence at the hands of another inmate. Prison officials have a constitutional duty to protect inmates from violence at the hands of their fellow inmates. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). However, prison officials are not expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). An inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate . . . safety" and disregards that risk. *Id.* at 837. An officer's awareness of the risk is evaluated subjectively. *Longoria*, 473 F.3d at 592-93. A prison official knows of an excessive risk only if (1) he is aware of facts from which he could infer that a substantial risk

of serious harm exists and (2) he in fact draws the inference. *Id.* at 593. No liability exists if an official reasonably responded to a known substantial risk, even if the harm was ultimately not averted. *Id.*

Morante alleges that prison officials should be liable for his injuries because they allowed Vasquez into the general population and they failed to stop the altercation through alternate remedial measures. Plaintiff does not allege that he was the intended target of violence when the fight broke out or that there was any specific risk of harm to Plaintiff prior to the fight occurring. He does not draw any link between himself and the unidentified prisoner who struck him on the hand with a metal bar. In essence, Plaintiff alleges that he was the innocent bystander of a fight between rival groups of inmates. Plaintiff does not allege that Defendants were aware of any specific risk of harm to him as an individual. Rather, he alleges that the mere presence of Vasquez in the prison population posed a generalized risk of violence to all inmates, including Morante.

It is undisputed that Vasquez's arrival at FCC Yazoo City was the catalyst for the fight between two rival groups of inmates. For purposes of establishing a constitutional violation, the question is whether any of the Defendants were aware of facts to infer a substantial risk of harm caused by placing Vasquez in the general population prior to the incident, and whether any of the Defendants in fact drew the inference of this substantial risk. Other than Defendant Leon Williams, Plaintiff does not allege that any of the named Defendants had any reason to know of the risk posed by placing Vasquez in the general population. In fact, all of the named Defendants state by way of declaration that they had no knowledge that Vasquez was the source of the conflict until a post-incident investigation revealed this fact.

7

With respect to Defendant Williams, Plaintiff alleges that Williams is responsible for evaluating the status and records of inmates arriving at FCC Yazoo City. Plaintiff further alleges that Williams failed to prevent Vasquez from entering the general population, despite the fact that Vasquez was a rival and target of the Paisas gang and that Vasquez would involve other Texas inmates in any altercation with the Paisas. According to Plaintiff, Williams failed to properly evaluate the status and records of Vasquez, thereby allowing the fight to occur.

In his declaration, Defendant Williams states that among his duties he is charged with reviewing Central Inmate Monitoring for all newly arriving inmates. However, he further states that he did not have information that placing Vasquez in the general population would create a conflict. Rather, he only learned that Vasquez was the source of the conflict during the post-disturbance investigation. Williams further states in relevant part:

> I do not remember if I specifically reviewed inmate Vasquez's file or if another member of the SIS Department performed this task. However, had I reviewed the file and if it contained information that would have indicated the safety of inmate Vasquez or the institution would have been in jeopardy by his placement in general population, I would not have allowed inmate Vasquez to enter general population. As an inmate's Unit Team and the Bureau's Designation and Sentence Computation Center perform the same review for newly arriving inmates, it is highly unlikely that inmate Vasquez's file contained information that would have raised concerns about his placement in general population at FCC Yazoo City. As such, I can only conclude that his file did not contain information that would have raised these concerns.

Thus, Williams has presented summary judgment evidence demonstrating a lack of subjective awareness of the risk posed by Vasquez.

Even assuming for arguments sake that there was information in Vasquez's inmate file that would have alerted prison officials to a potential risk to inmate safety, at best Plaintiff has

8

stated a cause of action for negligence against Defendant Williams. Plaintiff alleges that Williams failed to properly evaluate the risk of Vasquez entering the general population. The applicable standard is one of "deliberate indifference"; therefore, mere negligence is not sufficient to state a cause of action for failure to protect an inmate from assault at the hands of another inmate. *See e.g. Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990); *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cause of action against any of the Defendants for failure to protect Morante from inmate violence.

Plaintiff also makes various suggestions as to how the Defendants could have prevented the situation from escalating into a violent confrontation. Most notably, he asserts that using cameras and video was not an effective measure to prevent the fight. He suggests that Defendants should have closed the gate to the recreation yard or cleared the yard of inmates when they noticed signs of a possible problem. Plaintiff's complaint and other pleadings confirm the fact that the Defendants did take measures to abate the risk of violence. Defendants' declarations likewise outline the measures they took in attempting to prevent the fight from occurring initially and the measures they took to end the violence once it had started. Specifically, Defendants Bender and Moore notified supervising officers when they noticed unusual activity in the recreation yard. Defendants Phillips and Lott went to the recreation yard and began using cameras and video surveillance in response to the concerns of Bender and Moore. Initially, these efforts were effective as the inmates began to disperse. While these efforts may have been ultimately unsuccessful in preventing the fight, they were not objectively unreasonable nor do they constitute deliberate indifference. Accordingly, the undersigned concludes that Defendants

9

are entitled to qualified immunity.

## Motion for Extension of Time

On July 23, 2012, Morante filed a motion seeking an extension of time, or delay, in ruling on Defendants' [24] Motion to Dismiss or for Summary Judgment, in order to seek further discovery. He seeks an order from the Court compelling Defendants to produce an affidavit from SIS Technician Anderson on any relevant information concerning Johnny Vasquez's threat to the prison population. He also seeks incident reports regarding Johnny Vasquez from 2005-06. In light of the findings stated above, the undersigned concludes that Morante's motion for discovery is moot.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the [18] motion for default judgment be denied, that the [22] motion to amend be granted, that the [24] motion to dismiss and/or for summary judgment be granted, and that the [29] motion for extension be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by

the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 1st day of February, 2013.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE